UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.

RUSSELL CHARD, on behalf of himself
and similarly situated individuals,
and RETIRED FIREFIGHTERS
LEGAL DEFENSE FUND, INC.,

       Plaintiffs,

v.                                            Class Action

THE BOARD OF TRUSTEES OF THE CITY
OF HOLLYWOOD FIREFIGHTERS' PENSION
SYSTEM and CITY OF HOLLYWOOD,

       Defendants.

_____/

CLASS ACTION COMPLAINT
FOR DECLARATORY JUDGMENT, PERMANENT INJUNCTION,
DAMAGES, AND OTHER RELIEF

    Plaintiffs, Russell Chard, on behalf of himself and similarly situated individuals ("Retired

Firefighters") and Retired Firefighters Legal Defense Fund, Inc. ("Association"), sue Defendants The

Board of Trustees of the City of Hollywood Firefighters' Pension System ("Board") and City of

Hollywood ("City") pursuant to 42 U.S.C. § 1983 to vindicate the Retired Firefighters' constitutional

protections against impairment of contract and unlawful taking of property under Article I, § 10 and

the 5th and 14th Amendments to the United States Constitution and prohibit the Defendants'

modification, reduction or elimination of the Retired Firefighters' contractual supplemental pension

benefit.

    Plaintiffs also sue to vindicate the Retired Firefighters's constitutional protections against

impairment of contract and unlawful taking of property under Article I, § 10 and Article X, § 6, of

the Florida Constitution. Another mutually reinforcing fundamental right implicated is the right to bargain collectively under Article I, § 6 of the Florida Constitution. These mutually reinforcing guarantees should be read together and with Article X, § 14 of the Florida Constitution and Chapters 112, 175, and 447 (Part II), Florida Statutes, to prohibit Defendants from in any manner repudiating the Retired Firefighters' supplemental pension benefit. Also, Defendants' actions are prohibited by common law actions of breach of contract, equitable estoppel, and waiver. Plaintiffs sue under the Declaratory Judgment Act, 28 U.S.C. § 2201 for declaratory relief and sue for injunctive, monetary and other relief.

## JURISDICTION

1.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983 as the federal claims arise under the United States Constitution and the laws of the United States. This Court has supplemental jurisdiction over all state claims pursuant to 28 U.S.C. § 1367 as the claims are so related to the federal claims that they form part of the same case and controversy under Article III of the United States Constitution.

## VENUE

2.      Venue is appropriate pursuant to 28 U.S.C. 1391(b) as Defendants are located within this judicial district and the events giving rise to this complaint occurred within this judicial district.

<u>PARTIES</u>

3.      Plaintiff Chard and each of the "Retired Firefighters" was employed  by the City as a "firefighter" within the meaning of the Marvin B. Clayton Firefighters Pension Trust Fund Act, Chapter 175, Florida Statutes, and as such was a contributing member of the City of Hollywood Firefighters' Pension System (the "Plan"); retired (as defined and explained in ¶ 21, *infra*) prior to July 15, 2009; and is currently entitled to a defined benefit for life, or is the survivor of said member who is currently entitled to a defined pension benefit for life.

4.      The Retired Firefighters Legal Defense Fund, Inc. ("Association") is a nonprofit association organized to bring and defend against litigation to protect the rights of the Retired Firefighters as beneficiary members of the Plan and to pay related legal expenses.

5.      The City of Hollywood is a municipal government of the State of Florida and the sponsoring government of the Plan.

6.      The Board of Trustees of the City of Hollywood Firefighters' Pension System ("Board") is an independent body politic with a fiduciary duty to provide the Retired Firefighters' retirement benefits.  The Board has the express power to sue and be sued in its own name, to bring and defend lawsuits, and to enter into contracts.

<u>BACKGROUND AND FACTS</u>

**The defined benefit pension plan.**

7.      Over 50 years ago, the Florida Legislature established a single employer defined benefit retirement plan for the purpose of providing a lifetime source of income upon retirement to firefighters of the City.

8.     Pursuant to Chapter 175, Florida Statutes, the Plan is funded by the State of Florida's annual rebate of property insurance premium tax revenues in addition to mandatory contributions from the City and its firefighters.

9.     To participate in this revenue sharing program based on insurance premium taxes, the Plan must meet certain minimum requirements and be managed, administered, operated, and funded to maximize the protection of the firefighters' pension trust funds.

10.    Effective March 12, 1999, until amended on July 1, 2011, § 175.351, Florida Statutes provided among other things:

> (1)    PREMIUM TAX INCOME. - If a municipality has a pension plan for firefighters ... which in the opinion of the division meets the minimum benefits and minimum standards set forth in this chapter, the board of trustees of the pension plan, *as approved by a majority of firefighters for the municipality*, may:

> (a)    Place the income from the premium tax in s. 175.101 in such pension plan *for the sole and exclusive use of its firefighters, ... where it shall become an integral part of that pension plan and shall be used to pay extra benefits to the firefighters included in that pension plan...*

§ 175.351 (emphasis supplied).

11.    During this period, the insurance premium tax revenues must be used for the sole and exclusive use of the Plan's firefighters and to pay extra benefits to the firefighters included in the pension plan.

12.    Article X, § 14 of the Florida Constitution, along with Chapters 112 and 175, Florida Statutes, requires certain actuarial soundness, oversight by the Florida Department of Management Services, Division of Retirement, and other special conditions related to the insurance premium tax revenues.

13.     The Florida Department of Management Services, Division of Retirement determines disbursement of premium tax money and oversees and monitors the Plan for actuarial soundness and statutory compliance.

14.     The City's mandatory contributions must be adequate to maintain the Plan on a sound actuarial basis and meet funding deficiencies.

15.     The Board is a voting entity with a fiduciary duty to provide the Retired Firefighters' retirement benefits.  The Board is charged with the proper operation and administration of the Plan's fund in the best interests of the members and participants.  It is comprised of three firefighters who are employed by the City who are elected by a majority of the active firefighters, the Chief of the fire department, and a fifth person chosen and appointed by the City Commission who also serves as Chairman of the Board.

16.     Section 175.071(5), Florida Statutes, states that "nothing herein shall empower a board of trustees to amend the provisions of a retirement plan without the approval of the municipality or special fire control district."   Retroactive benefit modification is statutorily prohibited.

**Public sector employees' rights to collectively bargain
retirement benefits and have those benefits set by contract**

17.     Public sector employees in Florida have constitutional and statutory rights to collectively bargain wages, hours, terms and conditions of employment, including retirement benefits under Article I, § 6 of the Florida Constitution and Chapter 447, Part II, Florida Statutes.

18.     Hollywood Professional Fire Fighters, Local 1375 ("Local 1375") has been, at all times relevant, the certified collective bargaining representative of the City's firefighters.

19.     Since at least 1987, the City and Local 1375 have negotiated over the pension plan which came to be known as the "Hollywood Firefighters' Pension System," "plan" or "merged plan."

**The Retired Firefighters retired prior to July 15, 2009,**
**and their contractual benefits cannot be reduced or eliminated.**

20.     When a pension plan member reaches normal retirement eligibility and retires, his or her pension benefits become contractual entitlements which may not be modified, reduced or eliminated.

21.     All of the Retired Firefighters retired prior to July 15, 2009. "Retired" includes anyone who entered the deferred retirement option plan ("DROP") prior to July 15, 2009.  A Plan member who enters the DROP is "retired" for purposes of the Plan and must leave employment entirely within a specified time.

22.     The Retired Firefighters' supplemental pension benefit was set prior to July 15, 2009 and cannot be modified, reduced or eliminated, as detailed below.

**The supplemental pension benefit**
**was collectively bargained and set by contract in 1999.**

23.     The annual supplemental pension benefit was implemented pursuant to the negotiated contract between the City and Local 1375, in effect from October 1, 1999 through September 30, 2002. Article 28,  § 4 of this contract states:

Effective 10/1/99, the Board of Trustees shall be authorized to create and distribute *an underlined annual supplemental pension benefit which shall be payable first on September 30, 2000, and then every September 30 thereafter*. The supplemental pension benefit *shall be calculated, administered, and distributed as follows*:

a)      The actuary for the pension fund shall determine the *percentage rate of investment return on the pension fund assets during the twelve (12) month period ending each September 30th ("annual investment return")*. The rate determined shall be the rate reported in the most recent actuarial report submitted pursuant to Part VII of Chapter 112, Florida Statutes.

b)     If the annual investment return exceeds the actuary's annual fund earnings assumption rate of eight percent (8%), then a supplemental pension distribution shall be made to eligible recipients. If the annual investment return equals or is less than the assumption rate, no supplemental pension distribution shall be made that year.

c)     The value of the supplemental pension benefit fund shall be equal to the value of the positive difference, if any, between the annual investment return (up to a maximum rate of 10%) and the annual fund earning assumption rate (8%) to a maximum annual investment return value of up to two percent (2%) *as calculated on <u>the retirees' portion of the fund's earnings</u>*.

d)     Eligible recipients for supplemental pension benefit distribution shall be:
    (1)     Current pension recipients who retired or entered into the DROP at least ten (10) years prior to September 30th of the year for which supplemental pension benefits are to be paid.

    (2)     Surviving spouses (or other beneficiaries) of deceased pension recipients who had retired or entered into the DROP at least ten (10) years prior to September 30th of the year for which supplemental pension benefits are to be paid.

e)     The supplemental pension benefit fund shall be divided into equal shares, the number of which shall equal the aggregate number of eligible recipients. On an annual basis, one share shall be awarded and paid, when appropriate, to each eligible recipient.

(e.s.) Appended hereto as Exhibit 1 is a true and correct copy of the 1999-2002 contract.

24.     The supplemental pension benefit was implemented with approval of the State's Division of Retirement.

25.     The supplemental pension benefit was created to supplement the retirement benefits of the Retired Firefighters who have been retired for ten years or more, and the contractual benefit immediately applied to said retirees.

26.     In 1999, the fund's "annual investment return" was based on the market value as reported in actuarial reports.

27.     The supplemental pension benefit was implemented based upon "the retirees' portion of the fund's earnings" without limitation or exclusion.

28.     The supplemental pension benefit was implemented to be "payable on September 30" which is the last day of the City's fiscal year.  The supplemental pension benefit is also referred to as the "13th check" because in years when it is issued, Retired Firefighters receive an extra or 13th check from the Plan.

**The supplemental pension benefit was affirmed**
**by union contracts and City Charter and**
**benefit checks were issued in 2000, 2001, 2004, 2006 and 2008.**

29.     The supplemental pension benefit was affirmed in the union contracts approved by the City Commission for 2002-05 and 2005-08 and in the City Charter as approved by the City Commission and a majority vote of the firefighter Plan members.  Appended hereto as Composite Exhibit 2 is the supplemental pension benefit as provided in both the City Charter and union contracts prior to July 15, 2009.

30.     A supplemental pension benefit  check was issued in 2000, 2001, 2004, 2006, and 2008 based upon (1) the market value annual investment return and (2) the retirees' portion of the fund's earnings.

**Amendments to the supplemental pension benefit**
**made on or after July 15, 2009,**
**do not retroactively apply to the Retired Firefighters.**

31.     On July 15, 2009, the City Commission voted to amend the supplemental pension benefit by, among other things, adding the following provision:

> The supplemental benefits provided under this section shall only be paid after such
> time as the system has recovered any aggregate losses experienced beginning with

the actuarial experience on or after October 1, 2008. If the plan has failed to recover any such aggregate losses, then no supplemental benefit shall be paid.

Following a referendum election in or around November 2010, the City Commission voted to move the Firefighters' Pension System including the supplemental pension benefit from the City Charter to the Code of Ordinances. The July 15, 2009 amendment of the supplemental pension benefit does not apply to the Retired Firefighters, all of whom retired under the Plan prior to July 15, 2009.

32.     On or around July 25, 2009, the City and Local 1375 signed the 2008-09 union contract which amended the supplemental pension benefit language to include the July 15, 2009 amendment and to cap the benefit at $12,000 for employees who retired on or after July 16, 2009, among other things. The 2008-09 union contract which was signed on or around July 25, 2009, does not apply to the Retired Firefighters, all of whom had retired under the Plan prior to July 15, 2009.

33.     On September 7, 2011, the City voted to amend the supplemental pension benefit language in the Code of Ordinances as follows (additions underlined and deletions lined-through):

**Sec. 33.060 Supplemental pension benefit**.

(C)     The value of the supplemental pension benefit fund shall be equal to the value of the positive difference, if any, between the annual investment return (up to a maximum rate of 10%) and the annual fund earning assumption rate of eight percent (8%) to a maximum annual investment return value of up to two percent (2%) as calculated on the eligible Retirees' portion of the Fund's earnings attributable to assets apportioned to retiree benefit liability.

(D)     Supplemental Eligible recipients for supplemental pension benefit distributions distribution shall be paid to:

(1)     Pension Current pension recipients who retired or entered into the DROP (i) on or before September 30, 2011 and (ii) at least ten (10) years prior to September 30th of the year for which supplemental pension benefits are to be paid.

(2)  Surviving spouses (or other Beneficiaries) of deceased pension recipients who had retired or entered into the DROP (i) on or before September 30, 2011 and (ii) at least ten (10) years prior to September 30th of the year for which supplemental pension benefits are to be paid.

The September 7, 2011, amendment was not included in the union contract and did not apply to the Retired Firefighters, all of whom had retired under the Plan prior to July 15, 2009.

**A supplemental pension benefit check was issued in 2013.**

34.  A supplemental pension benefit check was issued in 2013 based upon (1) the market value annual investment return and (2) the retirees' portion of the fund's earnings. This check was issued consistent with the contract language and the practice applied from 1999 through the Retired Firefighters' retirement. At the Board's related public meeting on June 21, 2013, the Board's attorney recognized "that there are 3 groups of retirees requiring different treatment" and "anyone who retired or who was eligible to retire prior to July 15, 2009, and his or her beneficiaries, is eligible to receive a 13th check. Retirement includes anyone who entered the DROP prior to July 15, 2009." Further, she recognized the City's legislative amendments to the supplemental pension benefit did not modify, reduce or eliminate the benefit as to anyone who retired prior to July 15, 2009.  At the meeting:

> Trustee Pratt moved to direct the Plan's actuary to determine whether anyone in either Group 1 or 2 is entitled to receive a 13th check based upon the pension fund's performance for the last 12 month reporting period ending September 30th, then to direct the actuary to review each prior 12 month period until the last time a 13th check was paid to make the same determination. Trustee Huddleston seconded the motion. All were in favor.

Appended hereto as Exhibit 3 is a true and correct copy of the Board minutes for June 21, 2013.

35.  At the Board's public meeting on July 26, 2013, "Trustee Payne moved to pay $18,846.90 (the full amount) of the 13th check to all eligible retirees. Trustee Huddleston seconded

the motion. All were in favor." Appended hereto as Exhibit 4 is a true and correct copy of the Board

minutes for July 26, 2013.

### The contractual benefit was impaired in 2014.[1]

36.     On June 24, 2014, the Board held a public meeting where its actuary advised that "the

Ordinance is unclear on certain issues regarding the 13th check" and the Board could save the City

millions of dollars and reduce the value of the supplemental pension benefit by modifying the

method used for calculating the benefit. Specifically, he suggested that the Board consider issuing

the benefit based upon the actuarial smoothed value annual investment return instead of the market

value, explaining that "Actuarial returns smooth returns over 5 years which takes the volatility out

of the market returns." He also suggested that the Board consider issuing the benefit based on a pool

of assets that was substantially less than "the retirees' portion of the fund's earnings," claiming "that

the changes made in 2009 [after the Retired Firefighters had retired] did not cap the pool of assets

to be distributed for the 13th check. It just excluded some people from getting it and the amount they

could get. The total amount paid out would not change."  Appended hereto as Exhibit 5 is a true and

correct copy of the Board's minutes for June 24, 2014.

37.     Thereafter, the Board voted, upon motion and second, to modify the calculation of

the supplemental pension benefit by using (1) the actuarial smoothed value annual investment return

instead of market value and (2) the retirees' portion of the fund's earnings excluding fund earnings

of retirees who were not yet eligible to receive the supplemental pension benefit, thus reducing the

pool of assets to be distributed for the benefit.

---

[1] The City and the Board signed an agreement to toll the statute of limitations related to
the Plaintiffs' supplemental pension benefit claims in this action.

38.     In excluding fund earning of retirees who were not yet eligible to receive the pension benefit, the Board applied the City's September 7, 2011, amendment to the Retired Firefighters' supplemental pension benefit.

39.     On July 24, 2014, the Board held a public meeting where its actuary presented the following information according to the minutes:

> The amount of the 13th check, if payable, will be $8,997.35. The 13th check for last year was around $18,850. The way it was calculated before was that all of the assets and all of the retiree liability were considered. The excess return on all of the assets was bigger than 2% of the liabilities. Last year, there were 161 eligible members for the 13th check. This year there are 177 eligible members. The asset pool was around $1.6 million this year and around $3 million last year. Mr. Heinrichs commented if the Board would have kept the prior interpretation that 13th check would have continued to increase as assets increase. Now he would expect the amount of the 13th check will not increase by much, if any, and eventually start to decline over time.

Thereafter, the Board, upon motion and second, voted to issue the supplemental pension benefit payable based upon (1) the actuarial smoothed value annual investment return instead of the market value and (2) the retirees' portion of the fund's earnings excluding fund earnings of retirees who were not yet eligible to receive the supplemental pension benefit, thus capping the pool of assets to be distributed for the benefit.  Appended hereto as Exhibit 6 is a true and correct copy of the Board's minutes for July 24, 2014.

40.     The Board's enactment of the motions it voted upon on June 24 and July 24, 2014, modified and substantially reduced the monetary value of the Retired Firefighters' supplemental pension benefit issued in 2014.

**Plaintiffs objected to the impairment of contract.**

41.     The Retired Firefighters and the Association objected that the Board's actions in issuing the supplemental pension benefit in 2014 unlawfully impaired the Retired Firefighters' contractual rights.

42.     On March 10, 2015, Plaintiffs' counsel Richard Sicking sent a letter to the Board Chairman which stated in pertinent part:

> Further, it is well settled law that once a member reaches normal retirement eligibility, benefits cannot be reduced or eliminated. *See State ex. Rel. Stringer v. Lee*, 2 So.2d 127, 132-33 (Fla 1941); *O'Connell v. State of Florida, Dept. of Admin., Div. Of Retirement*, 557 So.2d 609 (Fla. 3d DCA 1990).

> This means that the motion made at the June 24, 2014, meeting would only apply to employees who retired after the effective date of City of Hollywood Ordinance No. 0-2011-26 [September 7, 2011]. It would not apply to those employees who retired prior to the effective date of City of Hollywood Ordinance No. 0-2011-26.

(Internal quotations and citations omitted.) Appended hereto as Exhibit 7 is a true and correct copy of the March 10, 2015 letter.

**The contractual benefit was impaired in 2015.**

43.     On April 17, 2015, the Board voted, upon motion and second, to issue the supplemental pension benefit payable on September 30, 2014, based upon (1) the actuarial smoothed value annual investment return and (2) the retirees' portion of the fund's earnings excluding fund earnings of retirees who were not yet eligible to receive the supplemental pension benefit.

44.     The Board's actions as described above, substantially reduced the monetary value of the Retired Firefighters's supplemental pension benefit issued in 2015. Appended hereto as Exhibit 8 is a true and correct copy of the Board's minutes for April 17, 2015.

### Impairment of the contractual benefit is threatened
### by the City's 2015 lawsuit against the Board.

45.      In September 2015, the City sued the Board in state court asking that the Board be ordered to retroactively apply the July 15, 2009, amendment to the Retired Firefighters' supplemental pension benefits and to recoup the supplemental pension benefits paid to the Retired Firefighters in 2014 and 2015.  By simple majority, the City Commission had voted to authorize its General Counsel to file that lawsuit.

### The contractual benefit was impaired in 2016.

46.      On June 22, 2016, the Board voted, upon motion and second, to issue the supplemental pension benefit payable on September 30, 2015, based upon (1) the actuarial smoothed value annual investment return and (2) the retirees' portion of the fund's earnings excluding fund earnings of retirees who were not yet eligible to receive the supplemental pension benefit. This supplemental pension benefit should not have been issued to the Retired Firefighters pursuant to their contractual rights as the market return for fiscal year ending September 30, 2015, was less than 3%. Issuance of this benefit check reduced the future value of the supplemental pension benefits due to the Retired Firefighters by removing their money from the fund where it otherwise would have remained and continued to earn interest for them.   Appended hereto as Exhibit 9 is a true and correct copy of the Board's minutes for June 22, 2016.

### The contractual benefit was Impaired in 2017

47.      On June 29, 2017, the Board voted, upon motion and second, to issue the supplemental pension benefit payable on September 30, 2016, based upon (1) the actuarial smoothed

value annual investment return and (2) the retirees' portion of the fund's earnings excluding fund earnings of retirees who were not yet eligible to receive the supplemental pension benefit.

48.    The Board's actions as described above, substantially reduced the future value of the Retired Firefighters' supplemental pension benefits issued in 2017. Appended hereto as Exhibit 10 is a true and correct copy of the Board's minutes for June 29, 2017.

### The contractual benefit was Impaired in 2018

49.    On September 27, 2018, the Board voted, upon motion and second, to issue the supplemental pension benefit payable on September 30, 2017, based upon (1) the actuarial smoothed value annual investment return and (2) the retirees' portion of the fund's earnings excluding fund earnings of retirees who were not yet eligible to receive the supplemental pension benefit. The Board's actions as described above, substantially reduced the future value of the Retired Firefighters' supplemental pension benefits issued in 2018. Appended hereto as Exhibit 11 is a true and correct copy of the Board's minutes for September 27, 2018.

### Defendants have impaired or seek to impair the Retired Firefighters' contractual and property rights to their pension benefits.

50.    Defendants have impaired or are threatening to impair the Retired Firefighters' right to receive the supplemental pension benefit to which they are contractually entitled, by changing the calculation of the benefit and thereby reducing or eliminating it.

51.    Defendants' actions violate the statutory intent and mandate to provide a uniform retirement system and to prevent retroactive decreases to benefits under Article X, § 14 of the Florida Constitution and Chapters 112, 175 and 447, Florida Statutes.

52.     Defendants' changes, reductions, and threatened elimination of the Retired Firefighters' contractual benefits are sufficiently immediate and real and have caused and will cause the Retired Firefighters injury.

53.     Defendants' actions, together and individually, constitute a substantial impairment and diminution of the contractual and property rights and benefits enjoyed by the Retired Firefighters who are expressly intended beneficiaries of the contract under which they retired, undermining confidence among the parties involved and thereby causing grave uncertainty and expense for the Retired Firefighters and the Association.

54.     Defendants' actions are neither reasonable nor necessary to serve an important governmental interest or protect public health, safety and welfare.  Rather, the unlawful actions herein described reflect a unilateral decision by Defendants to avoid a contractual obligation they no longer want to honor in favor of spending city resources on more politically popular causes.

55.     Defendants' actions have been adopted by Defendants' official policies, through the actions of Defendants' highest policy makers, and deprive Retired Firefighters of their property and contract rights under color of state law in violation of 42 U.S.C. § 1983.


CONSTITUTIONAL PROVISIONS

56.     Article I, § 10 of the United States Constitution prohibits states, including their municipal corporations, from adopting any law which impairs the obligation of contracts.

57.     The 5th and 14th Amendments of the United States Constitution prohibit states, including their municipal corporations, from unlawful takings of property without just compensation.

58.     Article I, § 10 of the Florida Constitution prohibits contract impairment.

59.     Article X, § 6 of the Florida Constitution prohibits the taking of property without just compensation.

60.     Defendants are prohibited from using their powers to impair a statutory or contractual right or obligation set by law or contract.  See Orange County Police Benevolent Association v. City of Casselberry and Florida Public Relations Commission, 457 So.2d 1125 (Fla. 1st DCA 1984).

CLASS ACTION ALLEGATIONS

61.     Plaintiff Chard brings this lawsuit on behalf of himself and the proposed class members under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2) and (b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.  Moreover, class certification is proper as the claims in this action derive from the same set of operative facts, Defendants acted on grounds applicable to the Class and Plaintiff Chard, and all Class members have been impacted and harmed by the acts of Defendants.

62.     Plaintiff Chard seeks to represent the proposed class defined as follows: all members of the City of Hollywood Firefighters' Pension System who retired under the Plan from the City prior to July 15, 2009 and are currently entitled to pension benefits, and the survivors of said members who are currently entitled to pension benefits. Excluded from the Class are current employees of the City; members of the Plan who retired under the Plan from the City on or after July 15, 2009; and former members and survivors who are not currently entitled to pension benefits.

63.     Numerosity.  The proposed Class consists of approximately 197 individuals. This Class is so numerous that individual joinder of all Class members would be impracticable. As a general rule, a group of more than 40 members satisfies the numerosity requirement.

64.   <u>Commonality</u>.  All or nearly all questions of law and fact are common to the class. These common factual and legal questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member include, but are not limited to, the following:

(A)   Whether Defendants' actions impair or threaten to impair the Retired Firefighters' contractual rights in violation of Article I, § 10 of the United States Constitution and contractual and collective bargaining rights in violation of Article I, §§ 6 and 10 of the Florida Constitution;

(B)   Whether Defendants' actions constitute an unlawful taking or threatened unlawful taking of property without just compensation in violation of the 5th and 14th Amendments to the United States Constitution and Article X, § 6 of the Florida Constitution;

(C)   Whether Defendants' actions violate the constitutional and statutory intent and mandate to provide a uniform retirement system and to prevent retroactive decreases to benefits under Article X, § 14 of the Florida Constitution and Chapters 112, 175 and 447, Florida Statutes;

(D)   Whether the Retired Firefighters have a contractual right to the supplemental pension benefit as it was provided to them from 1999 until July 24, 2014 (the date changes were first applied to the supplemental pension benefit issued to the Retired Firefighters);

(E)   Whether Defendants have waived and are estopped from reducing or eliminating the supplemental pension benefit as it was provided to the Retired Firefighters from 1999 until July 24, 2014; and

(F)     Whether Defendant City has waived and is estopped from retroactively recouping any supplemental pension benefits that have been paid to the Retired Firefighters.

65.     <u>Typicality</u>.  The claims of the representative Plaintiff are typical (if not identical) of the claims of the Class and arise from the same course of conduct by Defendants.  The class representative is Russell Chard who was employed by the City as a firefighter, was a contributing member of the Plan, retired prior to July 15, 2009 (in June 2004) and possesses the same interests and has suffered the same injury as the Class members.

66.     <u>Adequacy of Representation</u>.  Plaintiff Chard will fairly and adequately protect the interests of the members of the Class.  He has no adverse or antagonistic interests to those of the Class.  He has retained experienced, qualified and competent counsel committed to prosecuting this class action.

67.     <u>Predominance</u>.  The common questions of law and fact, *supra*, predominate over questions, if any, affecting only individual members of the Class.

68.     <u>Superiority</u>.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims is impracticable.  Absent a class action, most Class Members would likely find the cost of litigating their individual claims prohibitively high and would therefore have no effective remedy. Moreover, individual litigation would be unduly burdensome for the parties and the Court to manage.  On the other hand, management of this action through Class representatives and the Association fosters judicial economy and fair and efficient adjudication of the controversy.

69.     Additionally, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of

the Class which would establish incompatible standards of conduct for Defendants.   And, adjudication with respect to individual members, as a practical matter, would be dispositive of the interests of non-party members or would substantially impair or impede the ability of non-party members to protect their interests.

70.     Moreover, Defendants acted on grounds generally applicable to the Class, so that the final injunctive and declaratory relief sought herein are appropriate with respect to the Class as a whole.   Any damages awarded flow directly from liability to the Class as a whole on the claims forming the basis of the injunctive and declaratory relief.

## COUNT I: IMPAIRMENT OF OBLIGATION OF CONTRACT

71.     Plaintiffs adopt and incorporate by reference herein paragraphs 1 through 71, above.

72.     Defendants' actions repudiating the supplemental pension benefit contract impair and diminish, and threaten to impair and diminish, the obligation of contract in violation of Article I, § 10 of the United States Constitution.

## COUNT II: UNLAWFUL TAKING OF PROPERTY
## WITHOUT JUST COMPENSATION

73.     Plaintiffs adopt and incorporate by reference herein paragraphs 1 through 71, above.

74.     Defendants' actions repudiating the supplemental pension benefit contract have resulted or will result in a confiscation of the Retired Firefighters' valuable contract and property rights without just compensation in violation of the 5th and 14th Amendments of the United States Constitution.

<u>COUNT III: VIOLATION OF ARTICLE 1, §§ 6 & 10,</u>
<u>FLORIDA CONSTITUTION</u>

75.     Plaintiffs adopt and incorporate by reference herein paragraphs 1 through 71, above.

76.     Defendants' actions repudiating the supplemental pension benefit contract impair or diminish, and threaten to impair and diminish, the obligation of contract and collective bargaining in violation of the Article I, §§ 6 and 10 of the Florida Constitution.

<u>COUNT IV: VIOLATION OF ARTICLE X, § 6,</u>
<u>FLORIDA CONSTITUTION</u>

77.     Plaintiffs adopt and incorporate by reference herein paragraphs 1 through 71, above.

78.     Defendants' actions repudiating the supplemental pension benefit contract have resulted or will result in a confiscation of the Retired Firefighters' valuable contract and property rights without just compensation in violation of Article X, § 6 of the Florida Constitution.

<u>COUNT V: BREACH OF CONTRACT</u>

79.     Plaintiffs adopt and incorporate by reference herein paragraphs 1 through 71, above.

80.     Defendants' actions repudiating the supplemental pension benefit contract have breached the Retired Firefighters' pension contract.

<u>COUNT VI: EQUITABLE ESTOPPEL AND WAIVER</u>

81.     Plaintiffs adopt and incorporate by reference herein paragraphs 1 through 71, above.

82.     Defendants are estopped from changing, reducing or eliminating the contractual supplemental pension benefit as the Retired Firefighters have detrimentally and justifiably relied on

Defendants' actions and representations that the supplemental pension benefit was part of their pension contract.

83.     Through representations and actions described herein, the Defendants have waived any power to change, reduce or eliminate the Retired Firefighters' supplemental pension benefit.

84.     Defendants are estopped by virtue of having entered into a contract with the Retired Firefighters and thereby have waived the right to make or force a conflicting contract.

## REQUEST FOR RELIEF

85.     The Retired Firefighters have a right to sue for enforcement and obtain a declaration of their rights under 28 U.S.C. §§ 2201 and 2202.

86.     As a result of the foregoing, the Retired Firefighters need a declaration with regard to the enforceability of their rights to the supplemental pension benefit and the entry of an order specifically enforcing their contractual entitlement to the supplemental pension benefit and enjoining Defendants from using their powers to impair these contractual rights.

87.     Plaintiffs are entitled to a make whole remedy including monetary damages, a declaratory judgment, permanent injunctive relief, attorney fees and costs, and such other relief as the Court deems appropriate.

## REQUEST FOR JURY TRIAL

88.     Plaintiffs request a trial by jury on all issues so triable.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court award to the Plaintiffs a make whole remedy, including monetary damages, declaratory relief, and permanent injunctive relief to enjoin and restrain Defendants from violating the pension contract. This request for relief includes, but is not limited to:

A.   That this Court take jurisdiction over the parties and subject matter of this action.

B.   That the Court find all actions, resolutions and ordinances of Defendants that are in violation of the contractual and property rights of the Retired Firefighters and any resulting actions to be void and of no effect.

C.   That the Court enjoin Defendants from any attempt to avoid the obligations of the supplemental pension benefit to which Retired Firefighters are contractually entitled.

D.   That the Court award the Retired Firefighters all monetary damages plus interest resulting from Defendants' unlawful actions.

E.   That the Court award Plaintiffs costs and attorney fees as provided under 42 U.S.C. § 1988; and common law doctrine for recovery of a common fund or substantial benefits.

F.   That the Court award the Plaintiffs such other relief as the Court shall deem just, proper and appropriate.

Respectfully submitted,

DONNELLY + GROSS

s/ Paul A. Donnelly
PAUL A. DONNELLY, Trial Counsel
Florida Bar No. 813613
paul@donnellygross.com
JAMES F. BRANTLEY
Florida Bar No. 68294
jim@donnellygross.com
2421 NW 41st Street, Suite A-1
Gainesville, FL 32606
(352) 374-4001
(352) 374-4046 (facsimile)

Attorneys for Plaintiffs