UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-60323-CIV-ALTMAN/Hunt

**RUSSELL CHARD**, *on behalf of himself and similarly situated individuals, and* **RETIRED FIREFIGHTERS LEGAL DEFENSE FUND, INC.**,

    Plaintiffs,
v.

**THE BOARD OF TRUSTEES OF THE CITY OF HOLLYWOOD FIREFIGHTERS' PENSION SYSTEM** *and* **CITY OF HOLLYWOOD**,

    Defendants.
_____/

## ORDER

**THIS MATTER** comes before the Court upon the Defendants' Motions to Dismiss or Stay [ECF Nos. 20 & 23].[1] Both Motions to Dismiss or Stay are fully briefed,[2] and the Court has carefully considered the parties' arguments, the record, and the applicable law. For the reasons set out below, the Defendants' Motions are **GRANTED in part**—and, as a result, this matter is hereby **STAYED** until further Order of the Court.

### THE FACTS

This case arises from an alleged modification to the calculation of pension payments the City's retired firefighters are owed under the City's Firefighter Pension System (the "Pension").

---

[1] Because the City of Hollywood's (the "City") Motion to Dismiss or Stay [ECF No. 23] adopts, without much elaboration, the positions taken in the separate Motion to Dismiss or Stay ("MTD") [ECF No. 20] filed by the Board of Trustees of the City of Hollywood Firefighters' Pension System (the "Board"), this Order refers principally to the arguments posited by the Board in its MTD.

[2] The Plaintiffs filed their joint Response to the Motions to Dismiss or Stay on May 23, 2019 ("MTD Resp.") [ECF No. 38]. The Board filed its Reply on May 30, 2019 ("MTD Reply") [ECF No. 40]. The City also filed a Reply on May 30, 2019 ("City MTD Reply") [ECF No. 41], and then separately filed a "Notice of Adoption" [ECF No. 42] of the Board's MTD Reply.

1

The Plaintiffs—Russell Chard and the Retired Firefighters Legal Defense Fund, Inc. (the "Association")—represent a putative class of qualifying, retired City firefighters who, by this litigation, hope "to protect the rights of [r]etired [f]irefighters as beneficiary members" of the Pension. Pl. Compl. ¶¶ 3-4. The Complaint alleges that the City is the Pension's "sponsoring government" and that the Board is an "independent body politic with a fiduciary duty"[3] to provide retirement benefits to, among others, retired firefighters.[4] *Id.* ¶¶ 5-6. The Pension at issue here was, by the Plaintiffs' telling, created by the Florida Legislature, codified by Florida statute, and "funded by the State of Florida's annual rebate of property insurance premium tax revenues in addition to mandatory contributions from the City and its firefighters." *Id.* ¶¶ 7-8. The Pension is also "managed, administered, operated, and funded"—at least in part—by both the Florida Department of Management and the Board. *Id.* ¶¶ 9-14.

The parties dispute the propriety and effects of an alleged modification to the "supplemental pension benefit" ("SPB") that was collectively bargained for in 1999 and which is payable to retired firefighters under the Pension. *Id.* ¶¶ 23-25; *see also* MTD at 2.[5] The Plaintiffs contend that, in 2014, the Board held a public meeting at which it voted to modify the algorithm it would thereafter use to calculate the SPB by using an "actuarial smoothed value annual investment return" instead of the "market value" method it had employed before. Pl. Compl. ¶¶ 36-37. The Board also voted to issue the SPB "based on a pool of assets that was substantially less than the retirees' portion of the fund's earnings." *Id.* These modifications "substantially reduced the

---

[3] The Board is a "voting entity" with five members, including a Chairman. *Id.* ¶ 15.
[4] The Board is also "charged with the 'exclusive administration of and responsibility for the proper operation'" of the Pension. *See* MTD at 2 (citing City of Hollywood Municipal Code § 33.037(A)).
[5] The SPB is a variable benefit for retired firefighters—separate and apart from the other retirement benefits and cost-of-living adjustments to which they are entitled. MTD at 6.

2

monetary value" of the SPB. *Id.* ¶ 40. And, the Plaintiffs say, this "contractual impairment" has continued through the filing of the Complaint. *Id.* ¶¶ 41-55.

The Complaint levies six causes of action against the Defendants: impairment of the obligation of contract under Article I, § 10 of the U.S. Constitution (Count I); unlawful taking without just compensation under the 5th and 14th Amendments to the U.S. Constitution (Count II); violations of Article 1, §§ 6 & 10 of the Florida Constitution (Count III); violations of Article X, § 6 of the Florida Constitution (Count IV); breach of contract (Count V); and equitable estoppel and waiver (Count VI). The Plaintiffs also petition for declaratory relief under 28 U.S.C. §§ 2201-2202. Specifically, they appeal for a declaration in their favor "with regard to the enforceability of their rights to the [SPB] and the entry of an order . . . enforcing their contractual entitlement to the [SPB] and enjoining Defendants from using their powers to impair these contractual rights." *Id.* ¶ 86. In this way, the Complaint seeks "mixed" remedies—a combination of money damages and declaratory relief. *See generally Lexington Ins. Co. v. Rolison*, 434 F. Supp. 2d 1228, 1238 (S.D. Ala. 2006) (explaining the relationship between declaratory relief on the one hand and monetary—or "coercive"—claims on the other). At bottom, then, the Plaintiffs ask the Court to parse the City's municipal code—along with any other applicable bodies of state or federal law—and to declare unlawful the type of "modification" the Board allegedly undertook with respect to the SPB.

One last point: it is undisputed that an earlier-filed, nearly-identical complaint—brought by separate plaintiffs on behalf of *this very same putative class* of retired firefighters—is, even now, pending in Florida's 17th Judicial Circuit (the "state court proceeding").[6]

---

[6] *See Kellerman and Allen v. Board of Trustees of the City of Hollywood Firefighters' Pension System*, Case No. 18-027523 (pending in the 17th Judicial Circuit in and for Broward County, Florida) [ECF No. 20-1 at 54-78].

**ANALYSIS**

Where a federal plaintiff seeks only declaratory relief in a dispute whose merits are already being litigated in state court, the federal court must ask "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in state court." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (citations omitted); *accord Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942). This doctrine—known as *Wilton/Brillhart* abstention—affords "substantial discretion to [this Court] in deciding whether to exercise jurisdiction over a case when there is a parallel state court case." *Wilton*, 515 U.S. at 286; *see also W. Coast Life Ins. Co. v. Ruth Secaul 2007-1 Ins. Tr.*, No. 09-81049-CIV, 2010 WL 11506019, at *2 (S.D. Fla. May 14, 2010) (acknowledging that the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, invests district courts with broad discretion to refuse to exercise jurisdiction where federal and state cases are parallel). For purposes of *Wilton/Brillhart* abstention, federal and state cases are parallel when they "involve substantially the same parties and substantially the same issues." *Acosta v. Gustino,* 478 F. App'x. 620, 621 (11th Cir. 2012).

Expounding upon the *Wilton/Brillhart* abstention doctrine, the Eleventh Circuit has made clear that the well-trodden "considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts" encompasses *at least* nine factors—among these: (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (2) whether the judgment in the federal declaratory action would settle the controversy; (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue; (4) whether the declaratory remedy

is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race to *res judicata*, or to achieve a federal hearing in a case that is otherwise not removable; (5) whether the use of a declaratory action would increase the friction between our federal and state courts and thus improperly encroach upon state jurisdiction; (6) whether there is an alternative remedy that might be better or more effective; (7) whether the underlying factual issues are important to an informed resolution of the case; (8) whether the state trial court is in a better position than the federal court to evaluate those factual issues; and (9) whether there is a close nexus between the underlying factual and legal issues and state law or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action. *See Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005).

In this case, the Plaintiffs—citing both the City's municipal code and a litany of Florida statutes and constitutional provisions[7]—have petitioned for a declaration that the Defendants were prohibited from modifying the method that is used to calculate the SPB. Pl. Compl. ¶¶ 85-86. If this were the only relief the Plaintiffs were seeking, the application of *Wilton/Brillhart* abstention would be relatively straightforward. But the Plaintiffs also ask for "coercive" remedies—namely, money damages. *See Wilton,* 515 U.S. at 282. And, as the parties concede, the Eleventh Circuit has not yet had occasion to tell us which abstention test—either *Wilton/Brillhart* or the more

---

[7] As the Plaintiffs explain in the first page of their Complaint: "Plaintiffs also sue to vindicate the Retired Firefighters's [sic] constitutional protections against impairment of contract and unlawful taking of property under Article I, § 10 and Article X, § 6, of the Florida Constitution. Another mutually reinforcing fundamental right implicated is the right to bargain collectively under Article I, § 6 of the Florida Constitution. These mutually reinforcing guarantees should be read together and with Article X, § 14 of the Florida Constitution and Chapters 112, 175, and 447 (Part II), Florida Statutes, to prohibit Defendants from in any manner repudiating the Retired Firefighters' supplemental pension benefit." Pl. Compl. at 1-2.

restrictive doctrine set out in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)[8]—should apply in cases, like ours, that involve "mixed" legal and equitable claims.

In *Regions Bank v. Commonwealth Land Title Ins. Co.*, No. 11-23257-CIV, 2012 WL 1135844 (S.D. Fla. Apr. 4, 2012), this court summarized the three approaches that federal courts across the country have employed in resolving precisely this sort of "mixed" relief case:

> For example, some circuits hold that the *Wilton* standard is never applicable where non-declaratory claims are joined with declaratory ones, and that the abstention decision must be reached by reference to *Colorado River* only . . . [o]ther circuits consider whether the nondeclaratory claims are independent of any claim for purely declaratory relief; if so, then *Wilton* does not apply. Still other courts follow an "essence of the lawsuit" or "heart of the action" test that looks to whether the outcome of the non-declaratory claims hinges upon the outcome of the declaratory ones; if so, then *Wilton*'s standard governs; if not, then *Colorado River* applies.

*Regions Bank*, 2012 WL 1135844 at *3 (citations omitted). For the following two reasons, the Court is persuaded that the third—or "heart of the action"—test should apply where, as here, parallel federal and state cases implicate "mixed" relief.

*First*, both *Wilton* and *Colorado River* employ fluid, multi-factor tests that take stock of the unique factual, historical, and procedural circumstances of each individual case. It seems sensible, then, that in resolving the relative equities in "mixed" relief cases—that is, cases whose various claims would, standing alone, trigger *Wilton/Brillhart* on the one hand or *Colorado River* on the other—district courts should be encouraged to deploy a standard that is likewise fluid, and which similarly turns upon the application, not of bright-line rules, but of flexible guidelines. Of

---

[8] Courts applying *Colorado River* must weigh the following factors to determine whether abstention is appropriate: "(1) whether one of the courts has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the potential for piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal or state law will be applied; and (6) the adequacy of each forum to protect the parties' rights." *See Ambrosia Coal and Constr. Co. v. Morales*, 368 F.3d 1320, 1331 (11th Cir. 2004). The parties agree that *Colorado River* abstention—and not *Wilton/Brillhart*—would apply if the Complaint included only "coercive" claims.

the three tests outlined in *Regions Bank*, only the "heart of the action" test resolves the contest between *Wilton/Brillhart* and *Colorado River* with its own multi-factor balancing test. In this way, only that test properly accounts for the almost-infinite variety of salient details that might distinguish one "mixed" relief case from another.

*Second*, as the *Wilton* Court made clear, declaratory judgment actions differ fundamentally from other civil cases in the degree to which district courts are encouraged, under the Declaratory Judgment Act, to abstain from exercising their jurisdiction where, as here, that jurisdiction should "yield to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288. But to "eradicate" that substantial discretion by allowing plaintiffs to "tack on" non-declaratory claims to a lawsuit that is, "at its core, a declaratory judgment action," would "jettison those same considerations of practicality . . . and exalt form over substance." *Lexington Ins. Co.*, 434 F. Supp. 2d at 1237; *see id.* ("If peripheral monetary claims could deprive district courts of the discretion granted them by the Declaratory Judgment Act to hear or not to hear what are fundamentally declaratory judgment actions, then such claims would render federal courts virtually powerless (save for the rare case in which *Colorado River* abstention is warranted) to avert wasteful, duplicative declaratory litigation on exclusively state law issues in federal court running alongside parallel state litigation on the same issues . . . .").

Accordingly, this Court will apply the "heart of the action" test to determine which abstention doctrine—*Wilton/Brillhart* or *Colorado River*—should apply here. Applying that test, this Court must consider "whether the outcome of the non-declaratory claims hinges upon the outcome of the declaratory ones; if so, then *Wilton*'s standard governs; if not, then *Colorado River* applies." *West Coast Life Ins. Co.*, 2010 WL 11506019 at *3.

7

Even a cursory review of the Complaint's allegations reveals that the Plaintiffs' "coercive" claims are dependent upon a finding—that is, they are contingent upon a *declaration*—that the Board acted unlawfully when it modified the SPB. Indeed, in the "Request for Relief" Section of their Complaint, the Plaintiffs ask for the following: (1) a *declaration* of their rights under 28 U.S.C. §§ 2201 and 2202; (2) a "*declaration* with regard to the enforceability of their right[] to the SPB and the entry of an order specifically enforcing their contractual entitlement to the SPB"; (3) a *declaration* enjoining the Defendants from using their "powers" to impair the Plaintiffs' contractual rights; and, finally, (4) a "make whole" remedy, including "monetary damages, declaratory judgment, permanent injunctive relief, attorney fees and costs," and other, undefined relief (if necessary). Pl. Compl. ¶¶ 85-87 (emphasis added). The Plaintiffs thus *principally* seek various forms of *declaratory* relief and include their request for "monetary damages" only as one small part of a catch-all, "make whole" remedy. Most importantly, the nature and structure of the Plaintiffs' claims makes clear that the Court can safely wade into the thorny question of whether the Defendants violated either Florida or federal law *only after* it successfully interprets (and, to some extent, circumscribes) the Board's lawful powers with respect to the Pension system, juxtaposes those powers against the firefighters' rights vis-à-vis the SPB, investigates the tortuous—and protracted—historical and municipal context for the algorithmic modification at issue here, and then (finally) declares a winner. Put simply, this case is, at its heart, a declaratory judgment action—and, as such, "*Wilton*'s standard governs." *Id.* at *3.

As noted, the Eleventh Circuit has set out a non-exhaustive list of nine factors that district courts should consider in applying the *Wilton/Brillhart* abstention doctrine. *See Ameritas*, 411 F.3d at 1331. Most of those factors weigh strongly in favor of abstention here.[9]

With respect to the *first*, *fifth*, and *sixth* factors,[10] the Complaint implicates exceptionally complex questions of state law stemming primarily from a reticulated regulatory scheme that was created by the Florida legislature,[11] effectuated by a local municipality, and breached (if it was breached at all) by an agency of that municipality. As if that were not enough, the entire scheme— with its complicated mathematical and procedural calculations—exists solely for the benefit of a group of retired *state* employees. It is, therefore, unsurprising that the salient legal responsibilities with respect to the SPB—shared as they are by the City and its Board—appear to emanate entirely from the City's *municipal* code.

With respect to the *seventh* factor—whether the underlying factual issues are important to an informed resolution of the case—there has already been significant *state court* litigation between representatives of these same parties on very similar legal and factual questions, including with respect to the City's initial (2011) modification of the SPB. *See generally* MTD at 2-3. There is simply no need for this Court to begin reinventing a wheel that has been spinning in state court for years.

---

[9] The Court need not address every *Ameritas* factor because, as the Eleventh Circuit has explained, "the list of factors is not exclusive," and no one factor is controlling. *Great Lakes Reinsurance (UK) PLC v. TLU Ltd.*, 298 F. App'x 813, 816 (11th Cir. 2008).

[10] These are: (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (5) whether the use of a declaratory action would increase the friction between our federal and state courts and thus improperly encroach upon state jurisdiction; and (6) whether there is an alternative remedy that might prove better or more effective. *Ameritas*, 411 F.3d at 1331.

[11] As the Defendants correctly point out, the Pension is "itself a creature of state law, created by the City of Hollywood and contained in the City Code of the City of Hollywood." MTD at 11.

As for the *eight* and *ninth* factors,[12] the Plaintiffs in the state court proceeding adduce many of the same factual averments, rely on substantially the same arguments, and point to much of the same law in seeking almost precisely the same relief as the Plaintiffs do here. *See* MTD at 13-14 (comparing the causes of actions raised in the state court proceeding with the Plaintiffs' Complaint). Indeed, the state court complaint contains identical causes of action under the U.S. and Florida constitutions, raises indistinguishable contract claims under Florida law, and requests virtually identical forms of declaratory relief. *See Gregory Haskin Chiropractic Clinics, Inc. v. State Farm Mut. Auto. Ins. Co.*, 391 F. Supp. 3d 1151 (S.D. Fla. 2019) (applying the "heart of the action" test in a "mixed" relief case that, as here, was virtually indistinguishable from an earlier-filed state proceeding).[13]

In sum: "To allow the instant declaratory action to proceed would run the risk of inconsistent decisions and amount to gratuitous interference with the orderly and comprehensive disposition of a state court litigation. The instant action can better be settled in the proceeding pending in state court and, therefore, it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *West Coast Life Ins. Co.*, 2010 WL 11506019 at *5 (cleaned up). Thus, "in the interest[s] of conservation of

---

[12] Those are: (8) whether the state trial court is in a better position than the federal court to evaluate the factual issues; and (9) whether there is a close nexus between the underlying factual and legal issues and state law or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action. *Ameritas*, 411 F.3d at 1331.

[13] The second and third factors—(2) whether the judgment in the federal declaratory action would settle the controversy and (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue—do not tilt strongly in either direction. Indeed, to the extent that the federal case might settle the controversy—or, as the case may be, that it might prove useful—the controversy could be settled just as well (if not better) in state court. As such, these two factors stand, more or less, in equipoise.

judicial resources and [in eliminating] the potential for inconsistent judgements," the Court will, at this early stage of the litigation, abstain from hearing this (primarily) state-law dispute. *Id.* Moreover, where, as here, "the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Wilton*, 515 U.S. at 288 n. 2.

******

Accordingly, the Court hereby

**ORDERS AND ADJUDGES** as follows:

1. The Defendants' Motions to Dismiss or Stay [ECF Nos. 20 & 23] are **GRANTED in part and DENIED in part**.
2. This case is hereby **STAYED** until the conclusion of the state court proceeding. The parties shall provide the Court with a report on the status of the state court proceeding every 120 days from the date of this Order.
3. The Clerk is directed to **CLOSE** this case, and any pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 30th day of September 2019.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record